## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | In Chapter 11 |
| | ) | |
| EREHWON MOUNTAIN | ) | No. 04 B 04459 |
| OUTFITTERS, INC., | ) | |
| Debtor. | ) | Judge Jack B. Schmetterer |
| | ) | |
| | ) | |
| BARRY A. CHATZ not personally but as | ) | |
| Chapter 7 Trustee of EREHWON | ) | |
| MOUNTAIN OUTFITTERS, INC., | ) | Adv. No. 04 A 04476 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| SMITH SPORTS OPTICS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

Following entry of default order, the Court now makes and enters the following Findings of Fact and Conclusions of Law in support of default judgment against, Defendant, SMITH SPORTS OPTICS, INC.:

#### FINDINGS OF FACT:

1. On February 5, 2004, this case against Erehwon Mountain Outfitters, Inc. (the "Debtor") was commenced by the filing of an involuntary petition for relief under Chapter 7 of Title 11, United States Code (the "Bankruptcy Code").

2. On February 9, 2004, an order was entered granting relief in Chapter 7.

3. On June 3, 2004, the undersigned was appointed Chapter 7 trustee in the Case.

4. The Debtor turned over all of its account records and documents to the trustee. Therefore, at all relevant times, the Trustee had either direct care, custody and control over all of the documents referred to herein.

5. To the best of the Trustee's knowledge, with regards to any records attested to by the Trustee were prepared by the Debtor, the records were prepared and kept in the ordinary course of business, made by a person with knowledge of the facts or made from information transmitted by a person with knowledge of the facts at or near the time of the events appearing therein.

6. To the best of the Trustee's knowledge, with regards to all other records attested to by the Trustee, the records were kept in the ordinary course of the debtor's business and it is a regular business practice for the debtor to keep such records.

7. The Debtor maintained records that showed the goods purchased from the Defendant and the payments received by the Defendant during the 90 days prior to the filing of this case.

8. Pursuant to the Debtor's records, Defendant received $5,723.14 (the Preference Payment") from the Debtor during the 90 days prior to the filing of this case.

9. The Preference Payment was made by Debtor to or for the benefit of Defendant.

10. The Preference Payment constitutes a transfer of an interest of the Debtor in property within the meaning of §101(54) of the Bankruptcy Code.

11. The Defendant was a creditor of the Debtor at the time each of the Preference Payment was made within the meaning of §101(1)(A) of the Bankruptcy Code.

12. The Preference Payment was made on account of antecedent debts owed by Debtor to Defendant.

13. On the date of the Preference Payment and at all times during the Preference period, Debtor was insolvent within the meaning of §101(32) of the Code.

14. The Preference Payment was honored by Debtor's bank on December 19, 2003 which was within the Preference Period.

15. The Preference Payment enabled Defendant to receive more than it would have received if the case were a case under Chapter 7 of the Bankruptcy Code, if the Preference Payment had not been made, and if Defendant had received payment of its debt to the extent provided by the Bankruptcy Code.

16. Subsequent to Debtor's receipt of the receipt of the Preference Payments, Defendant shipped goods to Debtor and therefore is entitled to a credit for new value in the following amounts:

   a. $34.10 for goods invoiced on January 15, 2004; and

   b. $14.10 for goods invoiced on January 16, 2004.

17. After applying a credit for subsequent new value, the principal amount of the Preference Payments is $5,674.94.

18. On October 26, 2004, the Trustee, by and through his counsel, sent Defendant, via United States Mail, a letter demanding return of the Preference Payment.

19. Defendant failed and refused to return the Preference Payment.

20. Defendant, by and through its registered agent, was served with summons in the above captioned matter by United States Mail on January 3, 2005.

21. To date, Defendant has failed to appear, answer or otherwise plead.

22. The Trustee has brought a motion to hold the Defendant in default and to enter a default judgment.

23. The following amounts are due from Defendant to the Trustee from October 26, 2004 to the date of demand to July 12, 2005:

   | | | |
   |---|---|---:|
   | a. | Principal amount due: | $5,674.94 |
   | b. | Pre-Judgment Interest (6% from date of demand to July 12, 2005) | 241.62 |
   | | Total | $5,916.56 |

24.     On July 12, 2005, the Court entered an order holding the Defendant in default.

## CONCLUSIONS OF LAW:

I.    *Jurisdiction*

United States district courts have subject matter jurisdiction over cases under Title 11 and proceedings arising under, arising in, or related to proceedings under Title 11. 28 U.S.C. 1334(a) and (b). Each district court is authorized to refer such proceedings to the bankruptcy judges for the district. 28 U.S.C. § 157(a). In the Northern District of Illinois, such a referral has been made pursuant to Local Rule 2.33. The above captioned matter falls within the definition of a core proceeding that arises in or under Title 11 pursuant to 28 U.S.C. § 157(b)(2)(F).

II.   *The Trustee's Preference Action.*

    A.    *Elements of the Cause of Action.*

Section 547(b) of the Bankruptcy Code provides that a Trustee can avoid transfers of an interest in property made:

    (1) to or for the benefit of creditors;

    (2) on account of antecedent, pre-petition debt owed to those creditors by the debtor;

    (3) made while the debtor was insolvent;

    (4) made within ninety days (or within one year for insider-transferees) before the petition date; and

    (5) which enables those transferees to receive a greater recovery on their claims than they would have received if the transfer had not occurred, and they received payment of their claims under the provisions of Chapter 7. 11 U.S.C. § 547(b).

    B.    *Burden of Proof*

As plaintiff, the Trustee has the burden of proving the first, second, fourth, and fifth elements of §547(b). 11 U.S.C.§547(g); *Matter of Prescott*, 805 F.2d 719, 726 (7th Cir.1986).

Section 547(f) of the Bankruptcy Code creates a rebuttable presumption that the debtor was insolvent during the ninety days prior to the petition date.

C.   *The Avoidable Transfer*

By his uncontested affidavit, the Trustee has proved the *prima facie* elements of a preferential pre-petition transfer to the Defendant. The Defendant received a payment on account of antecedent debt during the ninety days prior to the filing of this case when the Defendant's check was honored by the Debtor's bank. *Barnhil v. Johnson*, 112 S.Ct. 1386 (1992). The payment was made while the Debtor was insolvent. The payment allowed the Defendant to receive more than it would have in a Chapter 7 liquidation case.

D.   *Subsequent New Value*

Section 547(c)(4) of the Bankruptcy Code provides that the trustee may not avoid as a preferential transfer any transfer if a creditor gave new value after the debtor receives a preferential transfer.

For a preferential transfer to be excepted from avoidance under §547(c)(4), the following order of events must have occurred:   (1) The creditor must have received a transfer which is otherwise voidable as a preference under § 547(b);

(2) After receiving the preferential transfer, the preferred creditor must advance additional credit to the debtor on an unsecured basis; and (3) That additional post-preference unsecured credit must remain unpaid as of the date of the bankruptcy petition. *Chaitman v. Paisano Auto. Liquids, Inc.* (*In re Almarc Mfg., Inc.*), 62 B.R. 684, 686 (Bankr.N.D.Ill.1986). If those three elements are satisfied, the creditor may set off the amounts of the post-preference unsecured credit which remains unpaid as of the petition date against the amounts which the creditor is required to return to the trustee on account of the preferential transfer. Id.

Under the new value defense, the preference defendant "has the burden of establishing that new value was extended, which remains unsecured and unpaid after the preferential transfer." *Matter of Prescott*, 805 F.2d 719, 731 (7th Cir.1986). However, the Trustee has given the Defendant a credit for the new value despite the fact that the Defendant is in default.

E.  *Prejudgment Interest*

As the prevailing party, the Trustee may recover prejudgment interest from the date of demand for return of the preference from the Defendant. Courts generally apply the prime rate of interest to the judgment. *In re Schwinn Bicycle Co.*, 205 B.R. 557, 574 (Bkrtcy. N.D.Ill.,1997). The prime lending interest rate in May 2005 was 6%.

## CONCLUSION

For the foregoing reasons, the Trustee's Motion for Judgment by Default should be granted. Judgment should be entered on behalf of the Trustee and against Defendant in the amount of $5,674.94 plus interest in the amount of $241.62 for a total of $5,916.56.

Dated: 7/12/05

ENTER

U.S. Bankruptcy Judge

BENJAMIN, BERNEMAN, AND BROM, LLC
Attorneys for Plaintiff
216 West Jackson Boulevard, Suite 330
Chicago, Illinois 60606
(312) 444-1996